**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**KENDRICK BUTLER,**
**#M03292,**

**Plaintiff,**

**v.**

**JOHN CHANDLER,**
**ANTHONY WILLS,**
**LIEUTENANT LYNCH,**
**JOHN JAMES,**
**NURSE LIZ,**
**CASSANDRA CHIDDY,**
**JOHN DOE 1,** *Nurse-LPN-Med Tech Menard CC,*
**JOHN DOE 2,** *C/O,*
**JANE/ JOHN DOE 1,** *Health Care Unit Administrator,*
**JANE/JOHN DOE 2,** *Medical Director*,
**NURSE JANE DOE 1,** and
**NURSE JANE DOE 2,**[1]

**Defendants.**

**Case No. 25-cv-02146-SPM**

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Kendrick Butler, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Stateville Northern Reception and Classification Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred while he was at Menard Correctional Center (Menard). The First Amended Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner

[1] Plaintiff identifies two individuals as "Nurse Jane Doe" in the case caption, both individuals were inadvertently left of off the docket. (Doc. 23, p. 1). For clarity, the Court will refer to them as Nurse Jane Doe 1 and Nurse Jane Doe 2, and the Clerk of Court will be directed to add them as defendants on the docket.

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The First Amended Complaint**

Plaintiff alleges that on April 2, 2025, he was transferred from Henry Hill Correctional Center to Menard on a "seg. to seg." transfer following his involvement in a staff assault. (Doc. 23, p. 7). When he left Henry Hill Correctional Center, he states that he was allowed to keep two items in his possession during the transfer: (1) an inhaler, and (2) a medical permit for "low bunk, low gallery, and special cuffing." (*Id.*). However, when he went to switch buses at some point during the journey, Lieutenant Lynch only allowed him to keep his inhaler. (*Id.*). He told Plaintiff, "You're a staff assaulter, you get what I gave you." (*Id.*).

Once Plaintiff arrived at Menard, during the intake process, Lieutenant Lynch whispered to Nurse Jane Doe 1 and then left. (Doc. 23, p. 8). Plaintiff then proceeded to explain to Nurse Jane Doe 1 that he suffers nerve pain, seizures, blackouts, and mental health disorders and that he takes Neurontin (gabapentin), Keppra, Tegretol, and Cymbalta to treat these conditions. (*Id.*). Plaintiff also told Nurse Jane Doe 1 that he was issued a low bunk, low gallery, and special cuffing permit because of his seizures and arthritis. (*Id.*).

While Plaintiff was housed in segregation, Plaintiff was not allowed to attend nurse sick call by Correctional Officer James from April through May 2025 and by Correctional Officer Chandler from May 2025 through August 2025. (Doc. 23, p. 8). Because he could not attend nurse sick call, he was not able to renew his seizure medications and his medical permits. (*Id.*). Plaintiff submitted nurse sick call requests to Nurse Chiddy, Nurse Liz, Nurse John Doe 1, Nurse Jane Doe

2, and Correctional Officer John Doe 2, but he still did not receive needed medication. (*Id.*).

In October 2025, Plaintiff was moved to a different cell in an upper gallery and assigned to the top bunk bed. (Doc. 23, p. 9). At some point, Plaintiff began receiving his medication, but by October 2025, he had been without his medication again for "at least a month." (*Id.*). While on the top bunk bed, Plaintiff had a seizure and fell from his bed, injuring his head. (*Id.*). Plaintiff was taken to an outside hospital and "pumped full of Keppra." (*Id.*). He then returned to Menard and was placed back in the same cell. (*Id.*).

## Discussion

Based on the allegations in the First Amended Complaint and Plaintiff's articulation of the facts, the Court designates the following claim as Count 1 in this *pro se* action: Eighth Amendment deliberate indifference to a serious medical need claim against Chandler, Wills, Lynch, James, Liz, Chiddy, Nurse John Doe 1, Correctional Officer John Doe 2, Healthcare Unit Administrator Jane/John Doe 1, Medical Director Jane/John Doe 2, Nurse Jane Doe 1, and Nurse Jane Doe 2.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (internal quotations omitted). To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v.*

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

*Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

Plaintiff has again failed to state a claim against Lieutenant Lynch. As previously pled, Plaintiff asserts that Lynch prohibited him from traveling with his medical permits in his possession. Because a medical permit "might call for treatment that is *beyond* what is required by the Eighth Amendment," the Court cannot plausibly infer based on this single and brief interaction that Lynch knew about Plaintiff's serious medical need and disregarded it by not letting Plaintiff travel with the permits. *Salley v. Parker*, No. 18-CV-5700, 2022 WL 2952818, at *10 (N.D. Ill. July 26, 2022) (quoting *Everett v. Baldwin*, No. 13 C 04697, 2016 WL 8711476, at *7 (N.D. Ill. Jan. 15, 2016)). The fact that Lynch's actions were unprofessional or contrary to an administrative directive also does not establish an Eight Amendment violation. *See Est. of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017). Nor does Plaintiff state a constitutional claim against Lynch by claiming that Lynch retaliated against Plaintiff because he believed Plaintiff had assaulted a fellow staff member. *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."). Count 1 and any other intended constitutional claim against Lynch is dismissed.

Plaintiff fails to state a claim against Nurse Jane Doe 1. In the First Amended Complaint, Plaintiff states that he informed Nurse Jane Doe 1 about his medical conditions and medications during the intake process. (Doc. 23, p. 8). Plaintiff fails to identify any action or inaction on the part of Nurse Jane Doe 1 that amounted to deliberate indifference, and other than interviewing Plaintiff during the intake process, it does not appear she was otherwise involved in his medical care. Accordingly, Count 1 is dismissed as to Nurse Jane Doe 1.

As to Nurse Chiddy, Nurse Liz, Nurse John Doe 1, Nurse Jane Doe 2, and Correctional Officer John Doe 2, Plaintiff claims that he submitted sick calls to them and they each individually read the sick call slips but "did nothing" to prevent his injuries in the months prior to his fall from

the top bunk bed. (Doc. 23, p. 8, 10). Plaintiff's allegations, however, lack the amount of detail required to plausibly support relief against any of these individuals. He does not describe when he submitted the sick call requests, how many, or what information he included in the sick call requests. Plaintiff also does not describe any interactions with or specific conduct on the part of these five Defendants. Because Plaintiff's allegations against Nurse Chiddy, Nurse Liz, Nurse John Doe 1, Nurse Jane Doe 2, and Correctional Officer John Doe 2 lack sufficient detail, Count 1 is dismissed against them. *Bell Atlantic Corp.*, 550 U.S. at 570 (a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). *See also Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect…cannot support a finding of deliberate indifference").

Count 1 is also dismissed as to Health Care Unit Administrator Jane/John Doe 1 and Medical Director Jane/John Doe 2. Plaintiff states that the medical director and the health care unit administrator have the responsibility to do "five day follow ups once somebody is sent off grounds for a medical furlough, yet, both entities knew" that he fell from the top bunk bed, and they did not refer him to see a medical provider when he returned to Menard from the hospital. (Doc. 23, p. 9). He also claims that they knew about his condition and did nothing to ensure he received medical care while in segregation and prevent the injuries he sustained when he fell from the top bunk bed. (*Id.* at p. 10). Again, these vague assertions are not enough to plead Eighth Amendment liability. Jane/John Does and 1 and 2 cannot be held liable based on their roles as upper-level officials or for the conduct of their subordinates. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Furthermore, Plaintiff has not provided any facts to support to the conclusion that they knew about his medical issues and did nothing. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). As there are no facts describing their direct involvement in Plaintiff's medical care, Count 1 is dismissed as to Jane/John Does 1 and 2.

Plaintiff alleges that prior to his cell transfer and falling from his bunk bed in October 2025, he wrote at least eight emergency grievances that were received and responded to by Warden Wills. (Doc. 23, p. 8-9). At some point, Plaintiff must have received his medications because he states that in October 2025, he had not received his medication "for at least a month." (*Id.* at p. 9). Plaintiff asserts that Wills knew about the issues he was having with receiving his medication but did nothing to "ensure it [wouldn't] happen again." (*Id.*). The Court cannot plausibly infer that Warden Wills acted with deliberate indifference based on these allegations.

Generally, the denial or mishandling of grievances "does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Nevertheless, the Seventh Circuit has indicated that a prison administrator may incur liability if he or she receives multiple highly detailed grievances and other pieces of correspondence detailing a serious medical issue. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Here, however, Plaintiff allegations do not meet this standard. It is not clear what he communicated in his grievances, when they were sent, and how Wills responded. The Court therefore cannot plausibly infer that Wills had sufficient knowledge and failed to intervene on Plaintiff's behalf to rectify the situation. As such, Plaintiff's claim against Warden Wills falls short of stating a constitutional claim and shall be dismissed without prejudice.

Count 1 will proceed against Correctional Officer Chandler and Correctional Officer James. Plaintiff claims that James prevented him from attending nurse sick call from April 2025 through May 2025 and Chandler prevented him from attending nurse sick call from May 2025 through August 2025. As a result, he was not provided with his medication and medical permits. (Doc. 23, p. 8).

## Motion for Objection

After the Court conducted a merit review of the original Complaint and dismissed the Complaint for failure to state a claim, Plaintiff filed a motion titled "Motion to Object to District Judge Stephen P. McGlynn and Have Review by Chief Judge (John Doe) Honorable Southern District." (Doc. 20). Plaintiff objected to the Court's merit review order and requested for the Chief Judge to conduct a merit review of the Complaint. The Court construed the motion as a motion seeking recusal of the undersigned from this case and denied the motion. (Doc. 21).

In response, Plaintiff has filed a new motion arguing that the Court mischaracterized his original Motion to Object (Doc. 22). Plaintiff states that when he filed the Motion to Object he was not seeking change of venue or recusal or removal of the undersigned but requesting for his Complaint to be reviewed by the Chief Judge. He now asks Chief Judge Yandle to review this new motion and the original Complaint. The motion is **DENIED**. "Litigants are not entitled to pick their judges," select which judge reviews their filings, or object to the initially assigned judge. *In re Specht*, 622 F.3d 697, 700 (7th Cir. 2010).

## Disposition

For the reasons stated above, the First Amended Complaint (Doc. 23) survives preliminary review pursuant to Section 1915A. The Clerk of Court is **DIRECTED** to **ADD** Nurse Jane Doe 1 and Nurse Jane Doe 2 as defendants on the docket. **COUNT 1** shall proceed against Correctional Officer Chandler and Correctional Officer James and is **DISMISSED without prejudice** as to the other Defendants. Because there are no surviving claims against Wills, Lynch, Nurse Liz, Cassandra Chiddy, Nurse John Doe 1, Correctional Officer John Doe 2, Health Care Unit Administrator Jane/John Doe 1, Medical Director Jane/John Doe 2, Nurse Jane Doe 1, and Nurse Jane Doe 2, the Clerk shall **TERMINATE** them as parties on the docket.

The Clerk of Court shall prepare for Chandler and James the following: (1) Form 5 (Notice

of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes allegations regarding physical injury and medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Pursuant to Local Rule 8.2(b), the Defendants need only to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 12, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.